## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| INTERSTATE BAKERIES CORP., | ) | Case No. 04-45814 |
| | ) | |
| Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| | ) | |
| INTERSTATE BAKERIES CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adversary No. 09-4134 |
| | ) | |
| CITY OF KANSAS CITY, MISSOURI, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

The narrow issue before the Court presented by the Debtor's Motion for Partial Summary Judgment is whether the City of Kansas City, Missouri, is entitled to a lien against certain of the Debtor's real property. The City's claim arises from the Debtor's guaranty of a "Cooperative Agreement" between the City and a developer known as the Armour and Main Redevelopment Corporation, and entity presumably affiliated with the Debtor.

Based on the uncontroverted facts, the Court finds that the City is not entitled to a lien against the Debtor's real property for amounts due under the Cooperative Agreement. The Court will therefore grant the Debtor's Motion for Partial Summary Judgment.

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, discovery, and disclosure material on file, and any affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.[1] In a motion for summary judgment, the moving party has the initial burden of demonstrating the absence of genuine issues of material fact.[2] Once

---

[1] Fed. R. Bankr. P. 7056.

[2] *Id.*, 477 U.S. at 323.

the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial, and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion.[3] When reviewing the record for summary judgment, the court is required to draw all reasonable inferences in favor of the non-movant; however, the court is "not required to draw every conceivable inference from the record – only those inferences that are reasonable."[4]

## UNCONTROVERTED FACTS

1.      On October 12, 1998, Armour and Main Redevelopment Corporation  ("A & M") entered into a "Redevelopment Contract" with the City of Kansas City, granting certain tax abatements to A & M in exchange for its redevelopment of real property located in a distressed area of Kansas City and Jackson County, Missouri (the "Real Property").

2.      Two sections of the Redevelopment Contract are particularly relevant to the resolution of the instant motion.  Section 9, entitled "Payments in Lieu of Taxes," requires (unsurprisingly) certain payments to be made in lieu of taxes, and 19 pages later, in section 30.b., entitled "Contribution of Funds for Public Improvements," requires A & M to enter into a "Cooperative Agreement" with the City, pursuant to which it would "contribute" $100,000 to pay for public improvements in the redevelopment area.

3.      Interstate Brands West Corp., a predecessor in interest to the Debtor, guaranteed "that funds will be available for the performance by A & M of its obligations under this Contract."

4.      As required by Section 30.b. of the Redevelopment Contract, on October 15, 1998, A & M entered into a "Cooperative Agreement" with the City, wherein A & M agreed to pay the city $100,000 over a period of 15 years for public improvements.

5.      The City recorded the Cooperative Agreement with the Register of Deeds of Jackson County, Missouri, on October 23, 1998, as Instrument No. 98K56302in Book 3297 at Page 1328.

6.      The Cooperative Agreement requires A & M to pay yearly installments of $6,666.67  "at

---

[3] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

[4] *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991).

such time as [A & M] makes its payment in lieu of taxes payment to the City as required under the Redevelopment Contract. . . ."

7.      As part of the Cooperative Agreement, the City agreed to form a committee comprised of representatives from A & M and the neighborhood to solicit recommendations for the use of the money "contributed" by A & M.

8.      Only one payment of $6,666.67 has been made on the Cooperative Agreement.

9.      On September 22, 2004, the Debtor filed a voluntary petition seeking relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Missouri.

10.     On December 5, 2008, the Court entered an order confirming the Debtor's plan of reorganization.

11.     The effective date of the plan was February 3, 2009.

12.     On February 5, 2009, the Defendant sent a letter to the Debtor demanding payments due under the Cooperative Agreement.

## DISCUSSION

The sole basis asserted by the City in support of its claim that it is entitled to a lien against the Real Property for payments due under the Cooperative Agreement is that those payments constitute "Payments in Lieu of Taxes" ("PILOTs"), which would be secured by the Real Property under Missouri law.  To wit, the City states in its Response to the Debtor's Motion for Partial Summary Judgment:

> The Cooperative Agreement in this case was recorded with the Jackson County Recorder of Deeds.  The PILOTS required by the Cooperative Agreement are special assessments.  Based on the above cited case law, special assessments constitute an enforceable lien upon the property.  Accordingly, as a matter of law, Debtors' motion for partial summary judgment should be denied as they have not met their burden in proving that they are entitled to judgment as a matter of law that the Cooperative Agreement is not a lien upon the property.  Further, the City is entitled to judgment [sic] finding that it has a valid lien on the property that runs with the land.[5]

---

[5] Defendant's Response, p. 3.

3

Although the City's statement of the law pertaining to PILOTs appears to be accurate,[6] the City is incorrect that the payments due under the Cooperative Agreement were PILOTs – in name, purpose, or character. First, the Redevelopment Contract and Cooperative Agreement make a clear distinction between the two obligations. PILOTs are addressed in Section 9 of the Redevelopment Contract, under a heading explicitly denoted "Payments in Lieu of Taxes," whereas the Cooperative Agreement, and the payments due thereunder, are discussed near the end of the Agreement in a catchall section entitled, "Other Provisions." The distinction is more acute in the Cooperative Agreement where it directs A & M to make the payments due under the Agreement "*at such time as [A & M] makes its payment in lieu of taxes payment to the City.*" Thus, the Agreement and, by implication, the parties, clearly considered the two payments as separate and distinct obligations.

Second, PILOTs differ from the payments due under the Cooperative Agreement in their character and purpose. Where the amount of PILOTs is based on revenue that would have otherwise been received by the various taxing jurisdictions from the subject property,[7] the amount due under the Cooperative Agreement was fixed. PILOTs are supposed to be deposited into a special allocation fund to pay redevelopment costs and obligations, with any surplus funds being distributed to the various taxing jurisdictions covering the subject property.[8] The Cooperative Agreement is silent as to where the payments are to be deposited, but the explicit purpose of the payments is to fund public improvements in the neighborhood surrounding the property, not to pay redevelopment costs and obligations, and the notion of a "surplus" would be a non sequitur in that context. The provision in the Cooperative Agreement requiring the City to solicit recommendations from a committee comprised of the representatives from the neighborhood and developer on how to spend the funds collected under the Agreement – instead of being appropriated as other tax revenues are – is another indication that those payments are different from taxes or PILOTs.

---

[6] *See Tax Increment Financing Comm. v. J.E. Dunn Constr. Co.*, 781 S.W.2d 70, 77 (Mo. 1989) (holding that PILOTs are special assessments) and *Lakewood Park Cemetery Assoc. v. Metropolitan St. Louis Sewer Dist.*, 530 S.W.2d 240, 246 (Mo. 1975) (holding that a special assessment may constitute a lien upon the property assessed).

[7] Mo. Rev. Stat. § 99.805(10).

[8] Mo. Rev. Stat. § 99.850.

4

Therefore, the Court concludes that the payments due under the Cooperative Agreement are not PILOTs, and the City's contention that it is entitled to a lien against the Real Property because the payments due under the Cooperative Agreement are PILOTs must fail.

## CONCLUSION

For the reasons stated above, the Debtor's Motion for Partial Summary Judgment will be granted.  A separate judgment consistent with this Memorandum Opinion will be entered pursuant to Fed. R. Bank. P. 9021.

**ENTERED** this 6th day of November 2009.

/s/   Jerry W. Venters
United States Bankruptcy Judge

A copy of the foregoing mailed electronically or
conventionally to all counsel of record